UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| JANET HALBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 7:23-CV-85-REW |
| | ) | |
| MARTIN O'MALLEY, Acting Commissioner of Social Security, | ) ) ) | OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

Plaintiff Janet Halbert moves for a preliminary injunction. *See* DE 4 (Motion); DE 4-1 (Memorandum in Support). Halbert requests that the Court enjoin the Commissioner from halting her disability benefits (and to reinstate said benefits) while her appeal is pending. *See id.* The Commissioner responded in opposition, *see* DE 15, and Halbert did not file a reply. The matter is ripe for ruling.[1]

---

[1] Halbert also requested an evidentiary hearing. *See* DE 4-1 at 19. The Commissioner opposed the request. *See* DE 15 at 14. The Court finds an evidentiary hearing unnecessary and thus denies Halbert's request. "[W]here facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held. [However,] where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing." *Certified Restoration Dry Cleaning Corp. v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir. 2007) (alterations in original) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312–13 (11th Cir. 1998)). Here, Halbert's underlying claims—whether the Commissioner violated Halbert's rights under the Fifth Amendment, the Administrative Procedure Act, or the Social Security Act—are questions of law; the parties do not appear to dispute the facts or raise credibility concerns on the portions of the record that matter. Further, the briefing on these issues is thorough. As to irreparable harm, the Court sees no "bitterly contested" facts or concerns surrounding credibility either. While Halbert's discussion of the facts surrounding this element is minimal, this speaks to the strength of her argument rather than the need for a hearing, particularly where Halbert has the burden. Indeed, the central question for the Court—whether the loss of disability benefits constitutes per se irreparable harm—is primarily a legal one.

1

I. **Background**

Halbert is a former client of disgraced Kentucky attorney Eric C. Conn. *See* DE 4-1 at 2. In 2006, with Conn as her lawyer, Halbert applied for disability insurance benefits (DIB) through the Social Security Administration (SSA). *See* DE 11-5 at 2–6 (2006 Benefits Application). Halbert obtained her sought DIB benefits in 2007 after receiving a favorable decision from SSA Administrative Law Judge (ALJ) David Daugherty. *See* DE 11-3 at 4–12 (2007 ALJ Decision). During this same period, Conn was involved in an unparalleled scheme with Daugherty and four doctors, by which Conn secured benefits for clients based on fraudulent disability applications. *See Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 793 (6th Cir. 2018).

The SSA "first learned about possible wrongdoing" in 2006, "when a senior case technician and a master docket clerk . . . raised concerns that Daugherty was reassigning Conn's cases to himself and rapidly deciding them in the claimants' favor." *Id.* In 2014, the Office of the Inspector General (OIG) identified thousands of applications—all from former clients of Conn—that it "'had reason to believe,' were tainted by fraud." *Id.* at 794. In 2015, with the OIG's consent, the SSA proceeded with redetermination hearings to evaluate the flagged applications. *See id.* This included Halbert. *See* DE 11-3 at 14–15 (Notice Remanding Case).

Following a redetermination hearing on February 9, 2016, *see* DE 16-6 at 2–23 (2016 Hearing Transcript), an ALJ concluded that there was insufficient evidence to find Halbert disabled under the Social Security Act (the Act). *See* DE 16-2 at 5–13 (Redetermination Opinion). The Appeals Council denied review of the ALJ's decision, *see id.* at 22–26 (Notice of Appeals Council Decision), and Halbert sued the Commissioner in federal court. *See id.* at 30–33 (*Halbert v. Colvin*, No. 7:16-cv-167, at DE 5 (E.D. Ky. Aug. 11, 2016)).

The Court remanded the case in July 2019 to the SSA for a second redetermination hearing, consistent with the Sixth Circuit's decision in *Hicks*. *See* DE 16-2 at 34–51 (*Halbert*, No. 7:16-cv-167, at DE 32). Per the Court's order, Halbert's benefits were reinstated until the SSA completed redetermination proceedings. *See id.* at 51.

In April 2023, an ALJ held a redetermination hearing concerning Halbert's application. *See* DE 16-1 at 34–69 (2023 Hearing Transcript). The hearing mechanics followed *Hicks* and the Agency's implementing AR. The ALJ concluded that Halbert was not disabled from the time of her original disability-onset date (March 31, 2006) through the time of Daugherty's favorable decision (September 5, 2007). *See id.* at 16–26 (2023 ALJ Decision). As a result of this decision, the SSA ceased Halbert's benefits. *See id.* Upon review, the Appeals Council declined further involvement and upheld the ALJ's decision. *See id.* at 2–5 (2023 Appeals Council Decision). Halbert then filed suit in this Court, challenging the Appeals Council's decision. *See* DE 1 (Complaint).

Halbert's instant motion requests that the Court reinstate benefits and enjoin the Commissioner from ceasing such benefits during the pendency of her appeal. *See* DE 4.

## II.  Standard of Review

In evaluating a motion for preliminary injunction, the Court weighs "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 385 (6th Cir. 2020) (quoting *ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015)). These four factors are not

prerequisites and should "be balanced against each other." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

A plaintiff seeking a preliminary injunction "bears the burden of justifying such relief." *ACLU Fund of Mich.*, 796 F.3d at 642 (quoting *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012)). While a plaintiff is "not required to prove his case in full," *Fowler v. Benson*, 924 F.3d 247, 256 (6th Cir. 2019), a preliminary injunction remains an "extraordinary remedy" that should be granted "only when the party seeking injunctive relief 'clearly shows' that she is entitled to it." *Sexton v. Comm'r of Soc. Sec.*, No. 23-5981, 2024 WL 1994918, at *2 (6th Cir. May 6, 2024) (alterations cleaned up) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 129 S. Ct. 365, 376 (2008)). *Sexton*, decided on a comparable record with like claims, blazes the path for resolution of this motion.

**III. Analysis**

    **a. Likelihood of Success on the Merits**[2]

The Court first considers whether Halbert has shown "a strong likelihood" of succeeding on the merits of her underlying claim. *See Hargett*, 978 F.3d at 385. This requires more than just "a mere possibility of success." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (citing *Mason Cnty. Med. Ass'n v. Knebel*, 563 F.2d 256, 261 n.4 (6th Cir. 1977)). Failure to establish this element "weighs against granting the motion for a preliminary injunction." *Coleman v. Winbigler*, 615 F. Supp. 3d 563, 569 (E.D. Ky. 2022); *see O'Toole v. O'Connor*, 802 F.3d 783, 788 (6th Cir. 2015) ("[A] finding that there is simply no likelihood of success on the merits is usually fatal." (quoting *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000))).

---

[2] The Court essentially ignores the § 1983 theory, which has no applicability in this case.

1. **Due Process Violation**

Halbert first alleges a procedural due process violation, arguing that "Defendant has not disclosed what evidence proves that there is in fact reason to believe that fraud was involved in Mrs. Halbert's 2007 award of benefits" and that as a result, Halbert "has not had the opportunity to challenge the credibility of this evidence" as required by the Fifth Amendment. *See* DE 4-1 at 5. Halbert also argues she has not been given an adequate legal opportunity to challenge the allegations of fraud.

Given the strong property interest a beneficiary has in the continued receipt of Social Security benefits, "the government must implement certain procedures before depriving claimants of that interest." *Sexton*, 2024 WL 1994918, at *3 (citing *Mathews v. Eldridge*, 96 S. Ct. 893, 901 (1976)). Pertinent to the Conn saga, where "the SSA has reason to believe fraud was involved in a benefits application, the government must, at a minimum, 'proffer some actual basis for believing that the plaintiffs' evidence is fraudulent'; and the plaintiff must 'have an opportunity to "rebut the Government's factual assertions before a neutral decisionmaker."'" *Id.* (quoting *Hicks*, 909 F.3d at 799). *Sexton*, building on *Hicks,* provides detailed guidance for the process strictures of fraud-based redetermination hearings:

> Sexton had an adequate opportunity to challenge the SSA's fraud determination. Following *Hicks*, the SSA published an Acquiescence Ruling listing procedures that it would implement to comply with our ruling. Social Security Acquiescence Ruling 19-1(6), *Hicks v. Commissioner of Social Security: Disregarding Evidence During Redeterminations Under Sections 205(u) and 1631(e)(7) of the Social Security Act*, 85 Fed. Reg. 6255-02, 2020 WL 529791 (Feb. 4, 2020). The SSA specified that before an ALJ excluded evidence that was suspected to be fraudulent, the adjudicator "will consider the individual's objection to the disregarding of that evidence." *Id.*
>
> Sexton's second redetermination hearing occurred after the Acquiescence Ruling was issued, and her hearing complied with its requirements. Sexton had the opportunity to object to the agency's assertions of fraud, and to present evidence rebutting those allegations. In support of her claim, she presented her own evidence

5

> that included testimony from her mother and a vocational expert. Also, a witness from the OIG testified at her hearing to explain why he believed Sexton's application contained fraudulent information, and the witness was cross-examined by Sexton's attorney. After considering Sexton's supporting evidence and objections, the ALJ ultimately excluded the evidence submitted from Dr. Huffnagle as fraudulent and denied her claim based on the remaining evidence in the record. Because she had the chance to rebut the OIG's assertion of fraud and to present evidence supporting her claim, Sexton has not demonstrated that the procedures employed at her hearing violated her due process rights.

*Id.* at *4.

Halbert's 2023 redetermination hearing, *see* DE 16-1 at 34–69, provided all of these same safeguards. The purpose of the hearing was "to determine whether there is reason to believe fraud or similar fault was involved." *Id.* at 36. Halbert was permitted to testify and provide her own evidence in the form of a vocational expert's testimony. *See id.* at 37. An OIG expert was present, testified in support of the fraud suspicion, and was cross-examined by Halbert's attorney. *See id.* at 41–54. And the ALJ ultimately excluded evidence submitted from Dr. Huffnagle as fraudulent only after considering Halbert's supporting evidence and objections. *See id.* at 17–19 (2023 Redetermination Decision). In short, the hearing employed all of the procedural guardrails required under the Fifth Amendment, as elucidated by *Hicks* and *Sexton*.

Halbert further fails to explain what specific procedures she was denied at the hearing. In *Sexton*, the Court emphasized that "although Sexton may have been prejudiced by . . . delays, she did not show that she was entitled to any additional procedural protections under the Fifth Amendment, beyond what we recognized in *Hicks*." *Sexton*, 2024 WL 1994918, at *4. Thus, because Sexton failed to "specif[y] which materials she lacks to establish her case . . . the district court did not err by finding she is not likely to succeed on the merits of her due process claim." *Id.* The same is true here, and Halbert's due process claim is unlikely to succeed.

6

2. **Statutory Violations**

Halbert next puts forth three ways in which the SSA allegedly violated the Social Security Act and/or the Administrative Procedure Act (APA).[3] The Court addresses each in turn.

i. *Adequacy of (and Opportunity to Defend Against) Fraud Finding*

Halbert first argues that the SSA violated the Act and APA by "relying on extra record allegations of fraud and refusing to allow Plaintiff to rebut such evidence using methods such as cross examination[.]" DE 4-1 at 6. As Halbert herself seems to recognize, this particular statutory claim is derivative of her due process argument. *See id.* (stating that the "first statutory violation relates to the Defendant's due process violation" and admitting generally that "the constitutional violation in Plaintiff's case is the most straightforward showing of likelihood of success on the merits" whereas the statutory arguments are only made "out of respect for the practice of constitutional avoidance"). Accordingly, this first statutory alternative fails for the same reasons as Halbert's due process argument: as outlined by *Sexton*, 2024 WL 1994918, at *4, Halbert was afforded all of the necessary procedural safeguards to dispute a finding of fraud. Thus, this statutory argument, divorced from the actual process followed at Halbert's hearing, is unlikely to succeed on the merits.

ii. *Impartiality of Investigators/Prosecutors*

Halbert next argues that Social Security ALJs "are effectively being directed by investigators or prosecutors within the agency" in violation of the APA. DE 4-1 at 8. The APA requires that an ALJ adjudicating a formal hearing not "be responsible to or subject to the supervision or direction of an employee or agent engaged in the performance of investigative or prosecuting functions for an agency." 5 U.S.C. § 554(d)(2). Halbert alleges the SSA violated

---

[3] The Complaint in this case has no APA component.

7

§ 554(d)(2) because (1) the OIG—an investigatory division of the SSA—referred Halbert's case to the redetermination ALJ, and (2) both the ALJ and Appeals Council "treated the Inspector General's conclusion as a proven fact, effectively resulting in the Inspector General directing a portion of the adjudicators' decisions in Mrs. Halbert's formal hearing." DE 4-1 at 8.

In support of this latter point, Halbert claims that Section I-1-3-25(C)(4)(a) of the SSA's *Hearings, Appeals, and Litigation Law Manual* (HALLEX) states that "adjudicators do not have discretion to reconsider the issue of whether the identified evidence should be disregarded when based on an OIG referral of information or a referral based on information obtained during a criminal or other law enforcement investigations." DE 4-1 at 9. However, this language was completely removed from HALLEX in February 2020—more than three years prior to Halbert's April 2023 redetermination hearing—pursuant to SSA Acquiescence Ruling 19-1(6) (the same ruling discussed extensively in *Sexton*). *See* SSAR 19-1(6), 85 Fed. Reg. 6255 (Feb. 4, 2020). In the wake of that ruling, SSA protocol now specifies "that before an ALJ exclude[s] evidence that was suspected to be fraudulent, the adjudicator 'will consider the individual's objection to the disregarding of that evidence.'" *Sexton*, 2024 WL 1994918, at *4 (quoting Acquiescence Ruling 19-1(6)); *see* HALLEX I-1-3-25(C)(4)(a) ("Before SSA disregards evidence . . . at the hearings level of the administrative review process, the ALJ will consider the individual's objection to the disregarding of that evidence and decide whether there is reason to believe that fraud or similar fault was involved in the providing of evidence in the individual's case."). In short, Halbert's outdated mischaracterization of HALLEX is directly addressed, and indeed contradicted, by current Administration guidance. Halbert's argument is further undermined by the fact that, at her redetermination hearing, the ALJ took Halbert's objections and contradicting evidence into consideration before ultimately concluding that fraud likely occurred. *See* DE 16-1 at 17–19. This

leaves the Court with no basis for concluding that the ALJ blindly accepted the OIG's findings of fraud "as a proven fact."

Halbert's remaining § 554(d)(2) arguments do little to move the needle. The mere fact that an ALJ considered the OIG's findings does not render the adjudication violative of the APA. *See Carter v. Colvin*, No. 0:16-cv-17-DCR, 2016 WL 5867051, at *15 (E.D. Ky. Oct. 6, 2016) ("While the OIG is not wholly independent from the Commissioner, it has no role in the decision on whether to grant benefits apart from having made the probable cause determination. The final decision of the agency is not being directed by the OIG. Rather, it is made by an ALJ who is not subject to the supervision or the direction of the OIG."). This is further evidenced by the high standard-of-violation that other circuits have placed on § 554(d)(2). *See Maynard v. O'Malley*, No. 7:24-cv-3-EBA, 2024 WL 902820, at *4 (E.D. Ky. Feb. 28, 2024) (collecting cases).

Accordingly, Halbert has failed to present evidence showing that the ALJ and OIG improperly comingled or compromised their duties in reaching the 2023 redetermination decision; thus, she has failed to show a strong likelihood of success on the merits for this claim.

### iii. "Immediately" Requirement

Finally, Halbert challenges the timeliness of her 2023 redetermination hearing, arguing that the SSA violated the Act's "immediately" requirement by holding her hearing sixteen years after SSA employees first raised concerns of Conn's fraud. *See* DE 4-1 at 9–16. The Act states, in part, that "[t]he Commissioner . . . shall *immediately* redetermine the entitlement of individuals to monthly insurance benefits under this subchapter if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits[.]" 42 U.S.C. § 405(u)(1)(A) (emphasis added). The Commissioner may delay proceedings if "a [state or federal prosecutor] with jurisdiction over potential or actual related criminal cases, certifies, in writing,

9

that there is a substantial risk that such action by the Commissioner of Social Security with regard to beneficiaries in a particular investigation would jeopardize the criminal prosecution of a person involved in a suspected fraud." *Id.* Halbert argues that because the SSA was made aware of the relevant fraud allegations as early as 2006, the Administration failed to "immediately" conduct her redetermination hearing as required by the Act.

Both *Hicks* and *Sexton* addressed and rejected substantively identical arguments, as each case—like here—analyzed the Act's "immediately" requirement in relation to a redetermination hearing stemming from Conn's fraud. As articulated by the Circuit in *Sexton*:

> Sexton argues that although the SSA was aware of allegations of fraud as early as 2006, it failed to conduct redetermination hearings "immediately," in violation of the Act. But we have considered and rejected this very argument, as the district court correctly concluded. In *Hicks*, we held that even if the SSA failed to comply with the Act's timing provision when it initiated redetermination efforts nine years after first learning about Conn's scheme, there was no statutory violation because the Act does not provide a remedy for noncompliance. 909 F.3d at 811–12 ("[I]f a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction.") (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993)). We explained that it "seems counterintuitive to hold that a failure to reverse fraudulent determinations quickly enough precludes the government from reversing those determinations at all." *Id.* at 813. Rather than prevent redetermination hearings wholesale, we explained that the government could "implement greater procedural protections" to minimize prejudice from the SSA's delay. *Id.*
>
> *Hicks* controls our analysis here. Even if the SSA failed to "immediately" hold Sexton's redetermination hearing after learning of Conn's fraud, the statute provides Sexton no relief for that delay. The district court therefore did not err when it rejected Sexton's claim that the Commissioner's failure to hold a prompt redetermination hearing violated the Act.

*Sexton*, 2024 WL 1994918, at *3; *see also Hicks*, 909 F.3d at 811–13 (putting forth same reasoning and conclusion). This analysis applies fully to Halbert, who does nothing to distinguish her

argument from the holdings of *Hicks* or *Sexton* in any substantive way.[4] Just like those cases, the analysis here turns on the fact that the Act "does not specify a consequence for noncompliance with statutory timing provisions." *Hicks*, 909 F.3d at 812. Accordingly, the Court finds that the Act provides Halbert with no relief for the delay in initiating redetermination proceedings.

In sum, Halbert has failed to show that any of her claims are likely to succeed on the merits; thus, this factor weighs against granting injunctive relief. That mostly concludes the motion, but the Court will review the balance of factors, fortifying denial.

### b. Irreparable Harm

The Court next considers whether Halbert would suffer irreparable harm if her request for injunctive relief is denied. "To warrant a preliminary injunction, a party must demonstrate harm that is 'certain and immediate,' and not 'speculative or theoretical.'" *Sexton*, 2024 WL 1994918, at *5 (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)). Halbert offers no affidavit or affirmative proof regarding her circumstances.

Halbert argues she would suffer irreparable physical and financial harm if her benefits are terminated while her appeal is pending. Specifically, she states that her "Medicaid insurance flows from [her] Supplemental Security Income award" and that she "has health problems that require regular treatment." DE 4-1 at 17. She also claims that if her "benefits are not reinstated, she will not have the money that [s]he needs to support her family each month." *Id.*

Disruption of government benefits can constitute an irreparable injury when said loss would negatively impact "the proper maintenance of [one's] health [and] . . . interruption of the care might cause irreversible physical harm." *Int'l Res., Inc. v. N.Y. Life Ins.*, 950 F.2d 294, 302

---

[4] While Halbert filed DE 4 prior to the *Sexton* ruling, the Court sees no excuse for her failure to make any reference to (much less attempt to distinguish) *Hicks*, which was published in November 2018—more than four years prior to DE 4's October 2023 filing date.

11

(6th Cir. 1991). Here, however, Halbert provides no explanation (or, critically, substantiation) as to what health problems require regular treatment, what that regular treatment entails, or how her inability to obtain that treatment would result in permanent harm. Similarly, beyond stating that she needs her benefits to support her family, Halbert offers no other evidence to support this claim. Even accounting for the underlying content of the SSA record, which failed to garner benefits, such vague, conclusory statements are not enough to convince the Court that Halbert will suffer irreparable harm. *See Sexton*, 2024 WL 1994918, at *5 ("Sexton does not explain what her essential medical treatment entails, or how her inability to obtain that treatment would result in permanent harm. Her allegations that she would potentially become homeless without the injunction are similarly speculative. While we are sympathetic to Sexton's circumstances, she has not provided any additional evidence to contradict the . . . determination that she failed to show irreparable harm." (footnote omitted)). The Court therefore finds that the second factor also weighs against granting Halbert injunctive relief. The injunction movant must meet the remedial elements by clear evidence, and Halbert has not approached that showing.

  c. **Substantial Harm to Others & Public Interest**

  Finally, the Court must consider whether a preliminary injunction will harm the opposing party, as well as whether it would serve the public interest. *See Overstreet*, 305 F.3d at 573. "These factors merge when the Government is the opposing party." *Nken v. Holder*, 129 S. Ct. 1749, 1762 (2009). Halbert argues that "[h]er situation is dire and uncertain without [her] benefits, while to the Defendant, Mrs. Halbert is just one out of nine million [SSA beneficiaries]." DE 4-1 at 17. She likewise posits that deprivation of her benefits for even a single month would have a devastating effect on her life, whereas if the SSA eventually prevails, it can simply seek repayment

12

of its relatively marginal costs "through the overpayment process" without significant detriment to its interests. *See id.*

"While the SSA is obligated to provide benefits to qualifying recipients, the government also has a duty to protect public funds by denying benefits to individuals who are not disabled under the Act." *Sexton*, 2024 WL 1994918, at *6 (citing *Valot v. Se. Loc. Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1227 (6th. Cir. 1997)). Additionally, given the record and the relief actually sought, "even if the Court were to find in favor of Plaintiffs' due process claims (or any other substantive claim), the ultimate remedy Plaintiffs seek—reinstatement of their previously awarded benefits—is not something the Court would provide even in a final decision on the merits in this action." *Maynard*, 2024 WL 902820, at *7 (quoting *Wombles v. Calvin*, No. 7:16-cv-141-KKC, 2016 WL 11792598, at *2 (E.D. Ky. Dec. 7, 2016)). "It is not in the public interest to award preliminary relief that the Court would not otherwise award due to the current procedural posture of [the] case[]." *Wombles*, 2016 WL 11792598, at *2. Accordingly, these factors counsel against a preliminary injunction as well.

IV. **Conclusion**

All four factors weigh against granting Halbert preliminary relief. Accordingly, the Court **DENIES** DE 4.

This the 16th day of December, 2024.

Signed By:
*Robert E. Wier*  RЄW
**United States District Judge**